UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:23-CR-6-GFVT-MAS |
| v. ) | |
| ) | |
| ALBERTO GUADALUPE AVILA, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment charges Defendant Alberto Guadalupe Avila ("Avila") with possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1). [DE 1]. The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C), [DE 7], and the Court conducted a detention hearing on May 25, 2023. [DE 13]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

**I.    BRA FRAMEWORK**

The statutory presumption of detention applies to Avila because he is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the

defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing

that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.  BACKGROUND

The Pretrial Services Report ("PSR"), [DE 14], and proffer from the United States and Avila provide the facts for the Court's analysis.

Avila is a 34-year-old man who currently resides in Lexington, Kentucky. [*Id*. at Page ID# 38]. Avila was born in Chicago, Illinois, and he spent approximately five years in Chicago and ten years in Aguascalientes, Mexico, during his childhood. [*Id*. at Page ID# 39]. However, Avila has lived in Lexington for approximately the last 15 years, and all his immediate family members live in Lexington or Central Kentucky. [*Id*.]. Avila has been in a relationship with his partner, Tara Hanley, for the last seven years, and the two share three children together. [*Id*.]. He currently lives with Hanley and their children. [*Id*.]. Avila has worked at a local horse farm for the last seven years and a different horse farm for the five years preceding that. [*Id*.]. Avila reported only using cannabinoids occasionally and alcohol weekly. [*Id*. at Page ID# 41].

Avila's criminal history includes three convictions for possession of marijuana and one conviction for possession of cocaine between 2011 and 2012. He was also convicted of criminal trespassing in 2012, menacing in 2008, disorderly conduct in 2010, terroristic threatening in 2010, possession of an open alcoholic beverage container in a motor vehicle in 2011, reckless driving in

2012, and violating a Kentucky emergency protective order/domestic violence order and fourth-degree domestic violence in 2014. [*Id*. at Page ID# 42–45]. Avila's criminal history also includes an unusually large number of traffic violations—many of which stem from failing to maintain required insurance. [*Id*. at Page ID# 42–46]. Notably, Avila's criminal history includes the issuance of seven warrants for failing to appear between 2008 and 2019. [*Id*.]. All of Avila's failures to appear occurred in traffic-violation proceedings except one, which occurred in his 2008 menacing case. [*Id*.]. Additionally, Avila has two probation violations—one in 2012 while on probation for terroristic threatening and one in 2014 while on probation for possessing cocaine and marijuana. [*Id*. at Page ID# 42–43].

At the detention hearing, Avila proffered evidence from the PSR to emphasize his strong ties to the community, long record of stable employment, and lack of a dangerous criminal history when compared to the underlying offense. He argued that the risk he would pose a danger to the community or fail to appear at future proceedings is low based on information in the PSR and that the Court could impose conditions of release to reasonably mitigate those concerns.

The United States' proffer primarily concerned the circumstances of the underlying indictment charge. Specifically, the United States explained that a Drug Enforcement Administration (DEA) informant contacted an individual in Mexico who was affiliated with a cartel in order to purchase cocaine. The individual advised the informant that he could provide cocaine in kilogram units through another individual, Avila, in Central Kentucky. The individual gave the informant Avila's cell phone number and stated that Avila had originally had ten kilograms of cocaine but then had only eight kilograms to sell. The informant then arranged through the individual in Mexico the purchase of three kilograms from Avila. Ultimately, Kentucky State Police performed a traffic stop on Avila and recovered three kilograms of cocaine

4

in the car. Avila admitted that he knew it was cocaine and that he was planning to deliver it to an individual (the informant) at an outlet mall in Simpsonville, Kentucky. The United States also explained that, although Avila described himself as a drug courier who would simply take directions from the individual in Mexico and deliver drugs, the individual in Mexico described Avila as a distributor who would have between eight to ten kilograms of cocaine.

### III.  ANALYSIS

**A.  APPLICATION OF THE PRESUMPTION**

As an initial matter, Avila rebutted the detention presumption as to both risk of nonappearance and risk of danger. Avila's proffer of information concerning his strong ties to the community, lengthy employment history, and relatively mild criminal history is minimal, but it is nonetheless sufficient to overcome the light § 3142(e) burden of production. *See Stone*, 608 F.3d at 945 (characterizing the defendant's burden of production with respect to overcoming the § 3142(e)(3) burden as "not heavy" and stating that the defendant "must introduce at least some evidence").

However, the Court does not ignore the fact that Avila's charge carries a statutory presumption that he poses a risk of nonappearance and danger under the BRA simply because he overcame the presumption. "The presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 F. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)). The presumption itself carries weight in the Court's assessment below of the § 3142(g) factors.

**B.     RISK OF NONAPPEARANCE**

The United States did not demonstrate by a preponderance of the evidence that Avila poses a risk of nonappearance that cannot be reasonably mitigated by conditions of release, so detention on this basis is not warranted.

Importantly, despite Avila's connections to Mexico—his contacts with a Mexican cartel member for drug distribution purposes and a significant portion of his childhood having been spent there—Avila is a long-time resident of Lexington, Kentucky. And besides his length of residence in the community, Avila also has significant ties to it. His entire immediate family resides in Central Kentucky, and he has maintained steady employment there for the last twelve years. He also lives with his partner and their three children, so he is unlikely to leave them. *See United States v. Giordino*, 3709 F. Supp. 2d 1256, 1271 (S.D. Fla. 2005) (noting that defendant's "substantial family ties here and elsewhere in the country . . . would all compel him to appear in Court and defend himself against [his] charges"). Avila faces a lengthy penalty if convicted of this charge, which normally indicates an incentive to flee or fail to appear. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). However, his strong familial and community ties also provide a compelling incentive to stay and appear for future proceedings in this case. The United States points to a significant number of failures to appear in Avila's criminal record as evidence of his proclivity to skip court. Fine, but only one of those instances occurred in a non-traffic-related criminal case, and it was almost 15 years ago. *See United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) ("The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which

the defendant faces a minimum of ten years' imprisonment."). Moreover, Avila does not appear to have any substance-use issues or suffer from any mental or physical ailments.

Although a close call, the Court concludes that Avila's strong connections to the community, family ties, and stable employment outweigh the United States' minimal showing that he would pose a risk of failing to appear if released pretrial. The Court can impose conditions of release—electronic monitoring and home detention—that would sufficiently assure Avila's appearance as required in this matter. Accordingly, the United States did not prove by a preponderance of evidence that release conditions cannot reasonably assure Avila's future appearance in this case, so detention is not appropriate based on the risk of nonappearance under § 3142(e).

**C.     RISK OF DANGER**

Although the Court does not find pretrial detention warranted based on a risk of nonappearance, the Court finds that the United States has proved by clear and convincing evidence that Avila poses a risk of danger to the community that cannot be sufficiently mitigated by release conditions. Analyzing the § 3142(g) factors below, the Court finds that pretrial detention is warranted based largely on the nature and circumstances of Avila's crime and the seriousness of the danger it poses to the community.

   **1.     Nature and Circumstances of the Offense**

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]" 18 U.S.C. § 3142(g)(1).

The nature and circumstances of Avila's offense strongly favor detention. The indictment and the United States' proffer established probable cause to believe Avila possessed with intent to distribute three kilograms of cocaine. Avila's own statements indicated that he knew he was in possession of cocaine and that he was in route to deliver the cocaine to a prospective buyer—the

7

DEA informant. Concerningly, the United States proffered evidence that Avila was a distributor, and not simply a courier, of cocaine in Central Kentucky and that the individual in Mexico indicated Avila had as many as ten kilograms for sale at one time. As such, the evidence at this juncture indicates that Avila's role in the cocaine distribution conspiracy under investigation was not simply topical; he was a central figure.

Drug distribution is a dangerous crime that places the community at considerable risk of harm. *See Stone*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence . . . To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."). Further, as mentioned above, "Congress has determined that individuals who, like Defendant, have been charged with drug offenses carrying a maximum term of imprisonment of ten years or more presumptively pose a danger to the community even if they do not have a criminal history." *United States v. Garcia*, 312 F. Supp. 3d 36, 42 (D.D.C. 2018). Even though Avila rebutted the statutory presumption, Congress's determination about the nature of this crime is significant. *See Stone*, 608 F.3d at 945. Accordingly, the first factor weighs strongly in favor of detention.

### 2. Weight of the Dangerousness Evidence

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.

8

Here, analysis of this factor largely overlaps with the other § 3142(g) factors. Avila is alleged to have possessed with the intent to distribute a large quantity or narcotics. And an individual associated with a cartel in Mexico with whom Avila allegedly conspired to distribute the drugs indicated that Avila was a distributor, not simply a courier, capable of selling between eight and ten kilograms of cocaine. Even setting aside Avila's generally positive history and characteristics—discussed below—the facts of the underlying offense amount to strong evidence of dangerousness. This factor favors detention.

    3.    **<u>History and Characteristics of the Defendant</u>**

The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).

This factor weighs slightly in favor of release. True, Avila's criminal record is lengthy and contains convictions for fourth-degree assault and terroristic threatening. However, those convictions are not recent—2010 and 2014, respectively—and the vast majority of his convictions are for minor traffic violations. Moreover, Avila has a steady employment record, he has lived in the community for roughly fifteen years, he has been in a relationship with his partner for seven years, and the two share three children together. But although this factor weighs in favor of release, it does not compensate for the other § 3142(g) factors, which firmly favor detention.

    4.    **<u>Nature and Seriousness of the Danger Risk</u>**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

9

Avila's conduct related to the underlying offense indicates a high level of danger to the public. Drug distribution of a large quantity is dangerous to the community at large. *United States v. Bland*, No. CR PWG-15-141, 2020 WL 1904742, at *3 (D. Md. Apr. 16, 2020) (concluding that "given the sheer quantity of narcotics Defendant has shown that he is capable of obtaining and distributing, Defendant poses a significant danger to the safety of the community"). And although Avila is charged with only one incident of possessing with intent to distribute cocaine, the evidence at this juncture indicates he was known by a cartel source to have large quantities of cocaine available for distribution. Given the danger posed by drug distribution and Avila's apparent ability to obtain and distribute a large quantity of drugs, the potential danger posed by his release is high, even if the risk that he will continue to engage in drug trafficking is low. This factor tips decidedly in favor of detention.

Given Avila's strong community ties and relatively minor criminal history, detention under § 3142 is a close call. But ultimately, the evidence indicates Avila is capable of distributing a large amount of cocaine in Central Kentucky and coordinating with a cartel in Mexico for that purpose. Such evidence outweighs the pro-release facts that are relevant to the § 3142 analysis, so the Court is convinced that Avila would pose a danger to the community if released pretrial. *See United States v. Garcia*, 312 F. Supp. 3d 36, 42–44 (D.D.C. 2018) (finding consideration § 3142(g) factors would result in pretrial detention where defendant possessed with intent to distribute one kilogram of cocaine but otherwise lacked any criminal history, had strong ties to the community, and a lengthy employment record).

### 5. Availability of Conditions Addressing Danger Risk

Having found that Avila's release pending trial would pose a serious risk of danger to the community, the Court also finds that it cannot sufficiently mitigate that risk with conditions of release. Avila did not specifically proffer a release plan, but the Court assumes he intends to reside

in the house in which he currently lives with his partner and children. However, it appears Avila's living with his partner and children have not previously deterred him from engaging in drug trafficking. Besides, drug trafficking, by its nature, permits stationary involvement and discrete activity. *See, e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home). So, it would be difficult to fashion conditions of release, such as electronic monitoring or home detention, that could reasonably assure the Court that Avila could not commit further similar offenses.

Avila's alleged conduct is too serious and any release conditions available to the Court are too ineffective given the circumstances. Accordingly, the Court finds that the United States has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Detention is therefore warranted based on Avila's risk of danger to the community.

## IV.   CONCLUSION

In sum, the Court finds that the United States not proved by a preponderance of the evidence that Avila is an irremediable nonappearance risk. However, the United States proved by clear and convincing evidence that Avila poses a danger to the community that cannot be mitigated with release conditions. Therefore, the BRA mandates that Avila remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 2nd day of June, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY